## Case No. 4,532.

### ESSEX COUNTY NAT. BANK v. BANK OF MONTREAL.

[7 Biss. 193;[1] 15 Am. Law Reg. (N. S.) 418; 5 Am. Law Rec. 49; 3 Month. Jur. 93; 11 Bankers' Mag. (3d S.) 142; 1 Law & Eq. Rep. 617.]

Circuit Court, N. D. Illinois. May, 1876.

Hitchcock & Dupee, for plaintiff.

Dexter & Smith, for defendant.

HOPKINS, District Judge. The testimony is not very clear as to whether the bank had currency enough on the 9th to pay the check, if payment had been insisted upon, but as this point is not material in the view I have taken of the law of this case, I shall not stop to settle it; when it was presented after certification it was not paid because the bank was insolvent.

The defendants had the check to collect. It was transmitted to them for that purpose, and their duty as collecting agents was to present and demand payment within the time prescribed by law, and, if not paid, notify the proper parties of its dishonor. If that had been done, the rights and remedies of all parties liable upon it, when it came into their hands, would have remained intact. If loss occurs by the acts or omissions of the party thus assuming the duty of collection, it should fall upon the delinquent agent, not upon the absent owner.

The State Street Savings Bank was not liable to the holder of the check without acceptance. It was liable before acceptance only to the drawers. Chapman v. White, 6 N. Y. 412. It could not be made liable to the holder of the check except by its own consent. It had the funds of the drawers, and according to the usual course of dealing with its customers was under obligation to pay on demand all checks drawn upon it by them, but a refusal to do so would not give the holder of the check the right to sue the bank. The drawer in such case would be liable, and he could sue the bank immediately, without redeeming the check, and the bank would be liable for damages for its refusal to perform its undertaking with him as depositor. Merchants' Bank v. State Bank, 10 Wall. [77 U. S.] 604; Bank of Republic v. Millard, Id. 152.

This being the law, the duty of the defendant upon receipt of the check for collection was plain. It was to present it for payment, and only for payment. This it did at first, and if it had stopped then there would have been no liability upon it. But it did not; it went farther; it asked for and received the certification of the bank upon the check. By this act a new relation was created between the parties. The amount the check called for was withdrawn from the drawers' account and control, and thereafter they had no right of action for it against the bank. The technical operation of the transaction was a transfer to the holder of the check of the drawers' funds and right of action against the bank. It superseded the previous rights

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

and obligations of the parties, particularly of the drawers.

Before that, the drawers could have stopped payment of the check or withdrawn the funds by other checks. After the certification they had no control over the fund or action of the bank in reference to it, nor any right to sue the bank for it. Nor did the bank owe them any duty in relation to it. It no longer possessed the character of a check. If the drawers had taken it up before its certification it would have been useless, but after that they could only get the money by surrendering it. It resembled after certification, more a certificate of deposit than a check. Now, what was the effect upon the legal rights and liability of the drawers? Did it not discharge them from all further liability upon the check? And if such should be found to be the consequence, does it not follow that the defendants are liable to the owners for the amount? If they have by their acts released the responsible drawers whereby the instrument is made worthless, why should they not make good the loss?

In Smith v. Millar, 43 N. Y. 176, it is said that presenting a check for payment and accepting a certificate as good "is equivalent to payment." In Morse on Banking (page 282), it is laid down that, if the holder chooses to accept the bank's certification, no matter to suit whose convenience, there can be but one result. The promise of the bank on the drawers' account, accepted as satisfactory by the creditor, discharges the debtor, and by the same action deprives him of all further concern in the premises. The bank no longer owes him any duty which he can enforce, or for the breach of which he can sue. If this is the result of the act of the defendant in accepting the certification of the check it would seem too clear for discussion that the defendant had incurred a liability to pay the amount of it to its principal. The drawers being released by the certification, and the bank being unable to pay, it follows irresistibly that the plaintiff is entitled to recover of the party releasing the drawers, whereby the amount of the check is lost to them.

It was claimed on the part of the defendant on the trial that the plaintiff must show some damages by the act. If the act released a responsible party that would be damage enough. But the law presumes damages from the negligence or unauthorized act of a collecting agent of commercial paper whereby any party to it is released or not charged. Commercial Bank of Albany v. Hughes, 17 Wend. 94. And if this presumption is not conclusive, but liable to be overthrown by proof to the contrary, it is the duty of the party at fault to show clearly that no damages did result to the holder of the paper from their negligence, which in this case the defendant did not do. It did not clearly show that the check would not

have been paid on the 9th of August if payment had been insisted upon. I think the only safe and maintainable doctrine in this case is that the defendant assumed the risk of payment by the bank when it accepted the certification, and if the bank did not pay, then it must. In laying down this rule I assume that the certificate operated as a release or payment as to the drawers, and that they were no longer liable upon the paper. This release I regard as the pivotal point in this case, and upon that point I am not forced to rely upon my own judgment. I find the precise question has been decided by the court of appeals of New York in the case of First Nat. Bank of Jersey City v. Leach, 52 N. Y. 350. That was an action on a check drawn by defendant on the 21st of November, 1871, on the Ocean National Bank, payable December 12, 1871. The bank, the plaintiff in that case, discounted it for the payee, and at 11 o'clock a. m. on the 12th day of December, they presented it to the Ocean Bank and got it certified as good. The drawer then had an account there sufficient to pay it, which was on the certification charged up to him on the Ocean Bank books. Within an hour after that, the Ocean Bank suspended. The check was again presented on that day for payment, and was duly protested for non-payment. The bank then sued the drawer to recover the amount of it. The court upon that state of facts held that the plaintiff could not recover; that the certification operated as a payment as between the holder and drawer.

In the opinion it is said "the law will not permit a check, when due, to be then presented and the money left with the bank for the accommodation of the holder without discharging the drawer," that if the holder chooses to have it certified instead of paid, he will do so at the peril of discharging the drawer.

But they say that "this would not discharge the drawer of a check who himself procured it to be certified and then put it in circulation; that the reason of the rule would not apply to him," and conclude the opinion by saying "that upon principle it must be held that the bank holds the money after certification by request of the holder, not at the risk of the drawer, but of the holder of the check."

This is the only direct authority I have found upon this question, from which I judge that the practice of holders of checks getting them certified is not very usual, for if it were, other cases would have found their way into the books and come under judicial consideration.

The defendant on the trial cited Bickford v. First Nat. Bank of Chicago, 42 Ill., 239, and Rounds v. Smith, Id. 245. From an examination of those cases, I do not see that they conflict with the case of First Nat. Bank of Jersey City v. Leach, 52 N. Y. 350. In those cases the checks were certified at

the request of the drawer before delivery. This expressly appears in the last case, and the judge in his opinion in that says "the case in all its important features is the same as Bickford v. First Nat. Bank of Chicago," so that I may assume that the checks in both these cases were certified by request of the drawer, which presents an entirely different question from this, and leaves the point involved here unconsidered in those cases.

In Brown v. Leckie, 43 Ill. 497, cited by the defendant's counsel, the check was also certified by the request of the drawer before it was passed by him, so that the reasoning of the court in that case was not predicated upon the same facts as appear here. But, as I understand those cases, that court holds that a check operates to transfer the amount named in it to the payee, and authorizes him to sue for and receive it from the bank. If such is the doctrine of that court, I am not at liberty to follow it, for the supreme court of the United States, in Bank of Republic v. Millard, 10 Wall. [77 U. S.] 152, has decided differently. And as the question involved is one relating to commercial securities, and belongs to the domain of general jurisprudence, this court is not bound by the decision of the state courts where the matters arise. Township of Pine Grove v. Talcott, 19 Wall. [86 U. S.] 666. But, waiving this view and difference between the courts on this point, I do not think that the decision of the learned court of Illinois above referred to, when carefully examined, will be found to touch the point involved here. It was not before that court in either of those cases, and, although the general language used might seem to be in conflict with the conclusions I have reached in this case, still when read and considered as used in reference to the facts and question before that court, no conflict or discrepancy of opinion will be found to exist. Those cases are clearly distinguishable on the facts from this case, and are, therefore, not authority upon the point involved here. I am therefore of the opinion that the defendant is liable for the amount of the check, with interest from the certification, as by its certification the drawers were discharged.

A question was suggested as to the right of this plaintiff to sue the defendant, as it was not its agent, alluding to the recent decision of the supreme court of the United States in Hoover v. Wise, 91 U. S. 308, but it was stated, and not disputed, that the plaintiff's attorneys had authority to sue in the name of the German-American Bank as well as in the name of the present plaintiff, the real owner, and that an amendment under the laws of the state was allowable, in the discretion of the court, by inserting the name of the German-American Bank as plaintiff in lieu of the present plaintiffs, and as the decision making the change necessary has been announced since the commencement of the suit, and as no injury can result, as it appears to the court, to the defendant thereby, I direct and allow an amendment in that respect by striking out of the process and pleadings the name of the present plaintiff, and inserting in lieu thereof the name of the German-American Bank, and as so amended that judgment be entered for plaintiff and against defendant for $882.76, the amount of the check and interest, with costs of this suit to be taxed.