HYMAN LIPTEN, Respondent, v. COLUMBIA TRUST COMPANY, Appellant.

First Department, December 3, 1920.

**Bills and notes — action against drawee to recover amount of certified check — evidence showing title in plaintiff — right of transferee of unindorsed check to benefit of provisions of Negotiable Instruments Law as to certification — conditional certification — presentation of check through New York Clearing House and certification under rule of Clearing House before returning for indorsement.**

In an action by the holder of a check against the drawee to recover the amount thereof it appeared that the payee of the check, which was payable through the New York Clearing House, delivered it to the plaintiff without indorsement; that the plaintiff indorsed the same and deposited it in his bank for collection; that in the due course of business it was presented to the defendant's representative at the Clearing House and taken by him to the defendant where it was discovered to be unindorsed by the payee and was returned through the Clearing House to the bank of deposit with a notation that payment was refused because of the lack of the indorsement by the payee; that a rule of the Clearing House required its member banks to certify checks before returning and that the check was so certified by the defendant. On all the evidence,

*Held*, that the payee of the check caused it to be delivered to the plaintiff without indorsement but with the intention that title thereto should pass, and that at the time plaintiff delivered the check to his bank for collection and when it was certified by the defendant, his lawful possession and ownership of the check were undisputed.

The plaintiff was entitled to the benefit of the regulation and effect of certification prescribed by section 323 of the Negotiable Instruments Law though he was not a holder within the contemplation of the statute.

The certification of a check may be conditional, and the drawee, being under no obligation to accept, may contract to make its liability depend upon performance of any condition it sees fit to impose unless it be one for payment other than in money.

Under the circumstances of the case, the memorandum accompanying the returned check pointing out the defect and the stamped certification are to be read together in the light of the Clearing House rule, and the certification should be deemed conditional on the check being properly indorsed by the payee.

Therefore, the plaintiff was not entitled to recover since he did not show performance of the condition upon the performance of which only the defendant undertook to pay the amount of the check to him.

APPEAL by the defendant, Columbia Trust Company, from a determination of the Appellate Term of the Supreme Court, entered in the office of the clerk of the City Court of the City of New York on the 26th day of May, 1920, affirming a judgment of the City Court of the City of New York in favor of the plaintiff entered upon the verdict of a jury rendered by direction of the court.

*Francis Woodbridge* of counsel [*James M. Gifford* with him on the brief], *Gifford, Hobbs & Beard*, attorneys, for the appellant.

*Arthur L. Fullman*, for the respondent.

LAUGHLIN, J.:

The plaintiff for his cause of action alleged that on the 31st day of January, 1920, the North River Savings Bank drew its check or draft on the defendant payable to the order of Nicolo Avv. DeMarco and delivered the same to the payee and that it was presented to the defendant for acceptance and duly accepted by it on the 4th day of February, 1920; that " theretofore " the payee, for a valuable consideration, duly assigned, delivered and transferred the check or draft to the plaintiff, who thereupon became and ever since has been the owner thereof; that thereafter the said check or draft was duly presented to the defendant for payment and payment thereof was demanded and refused and he demands judgment for the face of the check or draft, together with interest thereon from the 5th day of February, 1920. The defendant denied the allegations with respect to the presentation of the paper for its acceptance and its acceptance thereof and with respect to the assignment, transfer and delivery of the paper to the plaintiff, except in so far as admitted in its separate defense wherein it alleged in substance that the paper in question was a check and by its express terms was made payable through the New York Clearing House and was there presented by the Federal Reserve Bank to the defendant on the fourth day of February, not for acceptance but for payment, and that credit for the amount of the check was thereupon conditionally given by the defendant to the Federal

Reserve Bank, subject to examination of and with the right to return the check for any defect and to be recredited with the amount thereof; that upon examination of the check defendant discovered that it was not indorsed by the payee and thereupon and on the same day it returned the check to the Federal Reserve Bank through the New York Clearing House with a rider attached thereto showing that the check was defective and was returned for indorsement; that the Federal Reserve Bank accepted the return of the check and refunded the amount thereof to defendant; that the check has not been presented to the defendant for payment properly indorsed by the payee; that the defendant has offered to pay plaintiff the amount called for by the check upon presentation thereof properly indorsed by the payee or upon receipt of a duly acknowledged assignment of the check by the payee and that at all times it has been and still is ready, willing and able to comply with its said offer.

It was conceded on the trial that the drawer of the check had a deposit account with the defendant and that on the 31st day of January, 1920, it drew the instrument in question, which is in the ordinary form of a check on the defendant, for $1,000 payable through the New York Clearing House to the order of DeMarco and delivered the same to the payee by whom it was not indorsed; that on the third of February the check was deposited by the plaintiff, who indorsed his name upon it, with the Bank of the United States *for collection;* that said bank not being a member of the New York Clearing House, through which the check was payable, sent the check to the Federal Reserve Bank of New York for presentation to the defendant through the Clearing House; that the Federal Reserve Bank in the regular routine of business delivered the check to the defendant at the New York Clearing House and charged defendant with the face amount thereof; that the defendant's representative at the Clearing House took the check to the defendant bank where it was discovered that it was not indorsed by the payee; that Clearing House rule 8 requires that all checks returned through the Clearing House for indorsement or informality, if for a greater amount than $500, shall be certified by the drawee before they are returned; that upon its being discovered that the check was not indorsed

by the payee, a slip was attached to it by mucilage with the indorsement, "Returned by Columbia Trust Company, 358 Fifth Ave., for reason shown below," and below those words and before and after the word "endorsement" printed on the slip, a cross mark was made indicating that the check was returned for indorsement, and thereupon, in conformity with said rule of the Clearing House, the check was delivered to the assistant secretary of the defendant for certification and he stamped across the face of the check a certification as follows:

"CERTIFIED
"Payable Through
"New York Clearing House
"Feb. 4, 1920
"Columbia Trust Company
"358 Fifth Ave.
"A. Daly,
"Asst. Secy."

that the check was then returned through the Clearing House to the Federal Reserve Bank which thereupon credited the defendant with the amount with which it had been charged and returned the check to the Bank of the United States with said slip attached and certification thereon and that bank returned it to the plaintiff who has failed to procure the indorsement of the payee.

On these facts the defendant moved for a dismissal. The court manifested a desire to know the reason the check had not been paid, whereupon counsel for the defendant stated that the defendant was ready to pay but the plaintiff was unable to obtain the indorsement of the payee who was a lawyer, and claimed that there was a failure of consideration for the transfer of the check to the plaintiff, and that if the court should deny the motion, defendant desired to show that such was the fact. The court ruled that the certification having been made after the check came into the hands of the plaintiff, defendant was liable to him thereon, but that he should show that the check was delivered to him. Plaintiff was thereupon called as a witness in his own behalf and testified that on the 2d of February, 1920, he received the check from the payee or from one Bernstein to whom the

payee delivered it in his presence. On cross-examination he testified that the check was part of the consideration for the sale and transfer by him to one McNally of the lease and equipment of a garage. Defendant thereupon offered evidence to show that there was a failure of the consideration for the transfer of the garage property by the plaintiff to McNally and that, therefore, the plaintiff did not receive the check for a valuable consideration as alleged. The court ruled broadly that no evidence would be received concerning the equities between the payee of the check or McNally and the plaintiff and excluded the evidence offered and the defendant duly excepted. McNally, called by the defendant, testified that on the second of February he purchased the garage business of the plaintiff and on that occasion received the check in question from the payee and delivered it to the plaintiff in part payment for the garage. The payee of the check testified that at the request of McNally he delivered the check to him and knew what he intended to do with it, and did not deny that the use made of it was not the use intended, and that he had no interest in the garage or the purchase thereof but knew that McNally was buying it from the plaintiff. Bernstein testified that he represented McNally as his attorney with respect to the purchase of the garage business and that McNally delivered the check to him and he delivered it to the plaintiff.

It thus appeared that the payee of the check caused it to be delivered to the plaintiff and that, although the payee did not indorse it, it was intended that title thereto should pass. The evidence offered and excluded would have tended to show merely that the consideration, which was evidently deemed adequate at the time of the delivery of the check to the plaintiff, failed in whole or in part. Therefore, at the time plaintiff delivered the check to his bank for collection and when it was certified by the defendant, his lawful possession and ownership of the check were undisputed.

The learned counsel for the appellant contends that the certification of the check was improperly procured and that in no event was the plaintiff entitled to recover, even if the certification of the check by the defendant is to be deemed unqualified and unconditional, without showing that he

received it *for value* and he bases those contentions on the fact that the Negotiable Instruments Law recognizes a distinction between the negotiation of a check, payable to order, by the payee, which is by indorsement and delivery (Neg. Inst. Law, § 60), and the transfer of such a check by delivery or assignment *for value* but without indorsement (Neg. Inst. Law, § 79); and on the provisions of section 324 of the Negotiable Instruments Law relating to the acceptance or certification of a check which refer only to a *holder*, who by section 2 of the Negotiable Instruments Law is defined to be the payee or indorsee of a bill or note who has possession of it or the bearer thereof, which means a person in possession of a bill or note payable to bearer. The precise point in this regard made by the appellant is that the plaintiff, whether he received the check for value or lawfully acquired it without consideration, was merely a *transferee* and not a *holder* within the contemplation of the Negotiable Instruments Law and, therefore, was not entitled to have it certified or to the benefit of the statutory provisions with respect to the effect of certification of checks. But in *Meuer* v. *Phenix National Bank* (42 Misc. Rep. 341; affd., 94 App. Div. 331; 183 N. Y. 511), which arose after the former Negotiable Instruments Law took effect, the defendant was held on a certification of a check at the instance of one to whom the payee delivered it without indorsement although it was payable to her order. In that case the opinions do not discuss the point now made by the appellant, but the plaintiff had received the check for value, that fact having been found by the jury, and it was held that although the transfer without indorsement by the payee destroyed the negotiability of the check and rendered the transferee's title subject to any equities existing between the drawer and the payee, yet the title to the check passed by delivery and that the certification of the check by the drawee discharged the drawer and rendered the certifying bank liable to the owner of the check for the amount thereof. The contract made by the drawer of a check is that it will be paid on presentment if presented within a reasonable time (Neg. Inst. Law, § 322; *Baldwin's Bank* v. *Smith*, 215 N. Y. 76), but not that it will be certified by the drawee, and, therefore, when the payee or other holder or owner of a check instead of demanding payment, pro-

cures its certification by the drawee, the drawer's credit deposit with the drawee is, to the extent of the check, taken from his control and appropriated to the payment of the check, and that is the theory on which the law discharging the drawer and any indorsers is based. (*Davenport* v. *Palmer*, 152 App. Div. 761; revd., on other grounds, 211 N. Y. 596; *Lyons* v. *Union Exchange National Bank*, 150 App. Div. 493; *First National Bank of Jersey City* v. *Leach*, 52 N. Y. 350; *Gallo* v. *Brooklyn Savings Bank*, 199 id. 222.) Although the precise point now made by the appellant was not discussed in the opinions in *Meuer* v. *Phenix National Bank* (*supra*) it was necessarily involved in the decision and his counsel concedes that the point he now makes challenges the correctness of that decision, for the plaintiff in that action was not a holder within the definition implied in said section 60. Appellant's contention is that the Negotiable Instruments Law has made a very material change in the law with respect to the certification of checks by confining the liability on such certifications to cases in which the certification is procured by *a holder* as used in said section 60. Other provisions of the Negotiable Instruments Law tend to show that the regulation and effect of certification prescribed by section 323 *et seq.* were not intended to be so confined, and if they were, then by virtue of section 7, which provides that " In any case not provided for in this chapter the rules of the law merchant shall govern," *other* certifications and the liability thereon and the effect thereof were left to be governed by the rules of the law merchant which are the common law. If the contention of the appellant be sound, the Negotiable Instruments Law only regulates actions brought on negotiable instruments by a *holder* as referred to in section 60, for section 90 provides only for actions by *holders*. In section 93 of the Negotiable Instruments Law a *transferee* is referred to as a *holder;* and in the opinions of the courts the terms are commonly used synonymously. Moreover, both before and since the enactment of the Negotiable Instruments Law, the drawer, who could not be a *holder* before the negotiation of a check, might have it certified by the drawee and such certification binds the drawee to pay according to the order of the drawer contained in the body of the check, but in such case the drawer is not discharged by the certifica-

tion, and if the check certified before negotiation be payable to the order of the payee, the drawee is only bound to pay upon presentation of the check so indorsed (*Goshen National Bank* v. *Bingham,* 118 N. Y. 349; *Lynch* v. *First National Bank of Jersey City,* 107 id. 179; *Cullinan* v. *Union Surety & Guaranty Co.,* 79 App. Div. 409; *Schlesinger* v. *Kurzrok,* 47 Misc. Rep. 634); and if a check be payable to order and is transferred by the payee without indorsement, it thereby becomes non-negotiable and subject to any equities existing between the drawer and the payee, but if it be unconditionally certified by the drawee, it thereby becomes, subject to certain exceptions involving fraud or forgery or mistake, none of which are in point here, payable to the lawful holder and owner, notwithstanding the fact that the certification was not procured by a *holder* within the definition contained in section 60, and the drawee in such case by certifying the check so transferred without the indorsement of the payee takes the risk of title being proved without such indorsement. (*Clews* v. *Bank of N. Y. Nat. B. Assn.,* 89 N. Y. 419; S. C., involving another point, 105 id. 402; *Goshen National Bank* v. *Bingham,* 118 id. 349; *Marine National Bank* v. *National City Bank,* 59 id. 67; *Continental National Bank* v. *Tradesmen's Bank,* 173 id. 272, 278; *National Reserve Bank* v. *Corn Exchange Bank,* 171 App. Div. 195; *First National Bank of Jersey City* v. *Leach,* 52 N. Y. 350; *Freund* v. *Importers & Traders' Nat. Bank,* 76 id. 352; *Anglo-South American Bank, Ltd.,* v. *National City Bank,* 161 App. Div. 268; affd., 217 N. Y. 726; *Gallo* v. *Brooklyn Savings Bank,* 199 id. 222; *Meuer* v. *Phenix National Bank,* 94 App. Div. 331, 338.) It has always been the law that negotiable paper may be transferred by mere delivery without indorsement and either for or without value and that the transferee thereby takes it as a chose in action and may thereby become the lawful holder and owner subject to existing equities between the maker or drawer and the payee and may sue thereon in his own name. (*Wangner* v. *Grimm,* 169 N. Y. 421, 428; *Meuer* v. *Phenix National Bank, supra.*) There being no obligation on the part of a drawee to certify a check, there is no hardship in holding it liable to the lawful owner if it sees fit to certify a check payable to order after it has been transferred without the indorsement of the payee,

and in the absence of fraud, forgery or mistake in certifying, it is well settled that it becomes so liable and the drawer and indorsers become discharged and may not induce the bank to withhold payment to enable them to offset an equitable claim against the payee. (*Anglo-South American Bank, Ltd.,* v. *National City Bank,* 161 App. Div. 268; affd., 217 N. Y. 726; *Marine National Bank* v. *National City Bank,* 59 id. 67; *Carnegie Trust Co.* v. *First Nat. Bank,* 213 id. 301, [306; see, also, authorities cited in dissenting opinion, 156 App. Div. 712; *Irving Bank* v. *Wetherald,* 36 N. Y. 335; *Mount Morris Bank* v. *Twenty-third Ward Bank,* 172 id. 244. See, also, *Baldinger & K. Mfg. Co.* v. *Manufacturers-Citizens Trust Co.,* 93 Misc. Rep. 94; *Rankin* v. *Colonial Bank,* 31 id. 227; affd., 60 App. Div. 629.) It does not follow, however, that the defendant is liable to the plaintiff; for assuming, without deciding, that he has sufficiently shown ownership and that the court did not err in excluding evidence, it can be held liable to him on the theory *only* of an unqualified and unconditional certification of the check. There is no contractual relation between the payee or other holder or owner of a check and the drawee, and although the drawer may have ample funds on deposit with the drawee, the latter may refuse to honor the check and by doing so it becomes liable only to the drawer to whom the holder or owner of the check must look for redress. (*Hentz* v. *National City Bank,* 159 App. Div. 743; *Glennan* v. *Rochester Trust & S. D. Co.,* 209 N. Y. 12; *First National Bank* v. *Clark,* 134 id. 368; *O'Connor* v. *Mechanics' Bank,* 124 id. 324; Neg. Inst. Law, § 325.) The Negotiable Instruments Law prescribes no form for the certification of a check. Section 323 provides that where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance. Section 112 provides that the acceptor engages that he will pay the instrument " according to the tenor of his acceptance " and admits the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument, and the existence of the payee and his then capacity to indorse. Section 220 provides that by accepting a bill the drawee assents to the order of the drawer and that the acceptance must be in writing and signed by the drawee and must not provide that the drawee will perform his promise

by any other means than the payment of money.  Section 227, which relates more particularly to drafts and bills of exchange, provides that an acceptance is either general or qualified and that by a general acceptance the acceptor assents without qualification to the order of the drawer and that a qualified acceptance " in express terms varies the effect of the bill as drawn."  The other provisions of the Negotiable Instruments Law with respect to general and qualified acceptance and the rights of the parties with respect to qualified acceptances contained in sections 228, 229 and 230 of the Negotiable Instruments Law have no particular application to the point presented for decision with the exception that section 229 provides that the acceptor may agree to pay part only of the amount for which a bill is drawn and that the acceptance may be conditional, making the payment dependent on the fulfillment of a condition therein stated.  It follows that the certification of a check may be general, by which the drawee becomes obligated unconditionally to pay the owner, or it may be conditional and the drawee, being under no obligation to accept, may contract to make its liability depend upon performance of any condition it sees fit to impose unless it be one for payment other than in money.  In the case at bar, although the plaintiff had a right directly or indirectly to present the check to the drawee and request that it certify the check without paying it at the time, he did not do so.  He caused the check to be presented, as was required by its terms, through the New York Clearing House, not *for certification,* but *for payment,* and the drawee, after refusing to pay the check because not indorsed by the payee and attaching the memorandum showing why it so refused, in compliance with the rule of the Clearing House, to which the drawer by making it so payable assented, charged the amount thereof upon its books to the account of the drawer and certified the check and returned it to the plaintiff through the channels through which it had been presented for *payment.*  It is conceded that if the defendant had embodied in the certification a provision, such as it is claimed is used by all banks in Pennsylvania and by some in this State, to the effect that it was accepted or certified payable through the New York Clearing House when *properly indorsed,* defendant would not be liable.  That, it

seems to me, is in effect what the defendant did. It is perfectly plain from the action of the defendant that if the check had been presented to it by the plaintiff for certification, it would have refused to certify it until it was indorsed by the payee. The check was presented to it, not at its bank, as would have been necessary if certification had been desired, but at the Clearing House and *for payment* and it refused to make payment and returned the check to the plaintiff with the memorandum attached, notifying him, in effect, that it would pay the check if presented with the indorsement of the payee, and that, as required by the Clearing House rule, it had appropriated sufficient funds of the drawer and would hold them for that purpose. In the circumstances, the memorandum pointing out the defect and the stamped certification are to be read together in the light of the Clearing House rule and the certification should be deemed qualified and conditional. The plaintiff, therefore, has not shown performance of the condition upon the performance of which only the defendant undertook to pay the amount of the check to him. We are not now concerned with any question relating to the rights of the plaintiff as against the drawer or as against the payee or of the drawer as against the defendant or with respect to how long the defendant may be obligated to hold the fund to enable the plaintiff to obtain the indorsement of the payee. (See Neg. Inst. Law, § 79.)

It follows that the determination of the Appellate Term should be reversed, with costs, and the judgment of the City Court reversed, with costs, and the complaint dismissed, with costs, on defendant's motion at the close of the evidence to the denial of which it excepted.

CLARKE, P. J., DOWLING, MERRELL and GREENBAUM, JJ., concur.

Determination reversed, with costs, judgment of the City Court reversed, with costs, and complaint dismissed, with costs.